**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
K. WENDELL LEWIS, <u>et al.</u>,        )
                                        )
                    Plaintiffs,         )
                                        )
        v.                              )        Civil Action No. 15-1328 (RBW)
                                        )
PENSION BENEFIT GUARANTY                )
CORPORATION,                            )
                                        )
                    Defendant.          )
_____)

<u>**MEMORANDUM OPINION**</u>

The plaintiffs, approximately 1700 former airline pilots, initiated this action against

defendant Pension Benefit Guaranty Corporation ("Corporation") under the Employment

Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (2012) ("ERISA"), asserting claims

of breach of fiduciary duty, denial of benefits, and violations of the Administrative Procedure

Act ("APA"), and seeking certain declaratory and injunctive relief.  <u>See generally</u> First Amended

Complaint ("Am. Compl.") ¶¶ 1–13, 63–156.  Currently pending before the Court is the Pension

Benefit Guaranty Corporation's Motion To Dismiss and To Strike ("Def.'s Mot."), in which the

Corporation seeks to dismiss the plaintiffs' breach of fiduciary duty claim (Claim One), and to

strike the plaintiffs' demands for attorney's fees and for a jury trial.[1]  Def.'s Mot. at 1.  Upon

consideration of the parties' submissions, the Court concludes that the Corporation's motion to

---

[1] Although the Corporation's motion also included a motion to strike the plaintiffs' demand for a jury trial, the plaintiffs have abandoned this demand, Plaintiffs' Opposition to Defendant's Motion To Dismiss and To Strike at 1 n.1 ("While the [Corporation] did not initially appear to object to the demand [for a jury trial], having now objected, there is no further reason to consider the demand or to address whether to strike it."), and the Court therefore need not address the substance of that initial challenge in this Memorandum Opinion.

dismiss Claim One of the Amended Complaint must be denied.  However, the Court will grant

the Corporation's motions to strike the attorney's fees and jury trial demands.[2]

## I.   BACKGROUND

**A.   The Corporation's Duties Under the ERISA**

The ERISA was enacted in part to "ensure that employees and their beneficiaries would

not be deprived of anticipated retirement benefits by the termination of pension plans before

sufficient funds [had] been accumulated in the plans."  Pension Benefit Guar. Corp. v. R.A. Gray

& Co., 467 U.S. 717, 720 (1984).  As part of this statutory goal, the ERISA created the

Corporation—a component within the Department of Labor—to, inter alia, "provide for the

timely and uninterrupted payment of pension benefits to participants and beneficiaries under

plans to which this subchapter applies."  29 U.S.C. § 1302(a)(2).  The Corporation "administers

and enforces Title IV of [the] ERISA."  Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S.

633, 637 (1990).  As the Supreme Court explained:

> When a plan covered under Title IV terminates with insufficient assets to satisfy its
> pension obligations to the employees, the [Corporation] becomes trustee of the
> plan, taking over the plan's assets and liabilities.  The [Corporation] then uses the
> plan's assets to cover what it can of the benefit obligations.  The [Corporation] then
> must add its own funds to ensure payment of most of the remaining "nonforfeitable"
> benefits, i.e., those benefits to which participants have earned entitlement under the
> plan terms as of the date of termination.

LTV Corp., 496 U.S. at 637 (citing 29 U.S.C. §§ 1301, 1322, 1344).

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its
decision: (1) the Pension Benefit Guaranty Corporation's Memorandum in Support of Its Motion To Dismiss and To
Strike ("Def.'s Mem."); (2) the Plaintiffs' Opposition to Defendant's Motion To Dismiss and Strike ("Pls.' Opp'n");
(3) the Pension Benefit Guaranty Corporation's Reply in Support of Its Motion To Dismiss and To Strike ("Def.'s
Reply"); (4) the Plaintiffs' Notice of Supplemental Authority Regarding Defendant's Motion To Dismiss Claim One
("Pls.' Notice"); and (5) the PBGC's Response to Plaintiffs' Notice of Supplemental Authority Regarding
Defendant's Motion To Dismiss Claim One ("Def.'s Response to Pls.' Notice").

B.      **Factual Background**

This dispute originated with a September 2005 voluntary petition for bankruptcy filed by

Delta Airlines, Inc. ("Delta"), which thereafter resulted in Delta not making contributions to the

Delta Pilots Retirement Plan ("Plan"), a tax-qualified deferred benefit plan under the ERISA and

the Internal Revenue Code.  Am. Compl. ¶¶ 28, 30, 33.  The plaintiffs, former Delta pilots (or

their spouses or estate executors) are participants and beneficiaries under the Plan.  Id. ¶¶ 2, 29.

Delta's post-bankruptcy negotiations with the pilots' union[3] regarding the Plan's termination, id.

¶ 33, yielded an agreement in which the union "would receive $650 million in notes and a $2.1

billion allowed general non-priority unsecured claim . . . , which Delta and [the union] intended

to be used to 'replace unfunded benefits under the . . . Plan by using the proceeds to fund follow-

on retirement plans and other payments or distributions to [active] pilots," id. ¶ 34 (second

alteration in original) (quoting Am. Compl., Exhibit ("Ex.") A, at 2).

The Corporation objected to the proposed agreement between Delta and the pilots' union,

asserting that it was "designed in substantial part to skirt [ERISA's] safeguards."  Id. ¶ 35

(quoting Am. Compl., Ex. A, at 14).  These safeguards are achieved through a six-tiered

allocation scheme, in which benefits under a plan such as the Plan here are paid in order of

statutory priority, which the Court will refer to as Categories 1 through 6.  See id. ¶ 19; see also

29 U.S.C. § 1344(a)(1)–(6) (setting forth the order of priority a plan administrator is required to

apply when allocating to participants the value of assets in a single-employer plan).  Under the

circumstances present here, "[Category 3] is the highest priority category . . . [under which]

benefits are reserved for those participants who were retirement-eligible at least three years prior

to a plan's termination, under the plan provisions as they existed five years prior to plan

---

[3] The pilots were represented by the Air Line Pilots Association.  See Am. Compl. ¶ 27.

termination."  Am. Compl. ¶ 19.  The proposed agreement between Delta and the pilots' union allegedly would have "improperly allowed funds which should properly go to the [Corporation] in connection with [the] ERISA's priority allocation scheme to leave the control of the plan sponsor/control group and thereby to fund pension benefits outside of [the] ERISA's asset allocation scheme[] . . . ."  Id. ¶ 35 (citing Am. Compl., Ex. A, at 14–15).  "In essence, the [proposed agreement] would allow Delta and [the pilots' union] to turn the asset allocation scheme on its head, putting younger active workers to the front of the line while relegating retirees living on a fixed income to the back."  Id.

Over the Corporation's objections, the bankruptcy court approved the agreement between Delta and the pilots' union, and the Corporation "appealed [that] ruling to the district court."  Id. ¶ 36.  However, the Corporation later "withdrew" the appeal following the December 4, 2006 execution of a settlement agreement between Delta and the Corporation.  Id. ¶ 39.  Under the settlement agreement, the Corporation "received $225 million in notes, and a $2.2 billion unsecured bankruptcy claim."  Id.  On December 20, 2006, the bankruptcy court approved the settlement agreement between Delta and the Corporation.  Id. ¶ 41.  The Plan "was retroactively terminated as of September 2, 2006 . . . , and the [Corporation] became the [Retirement] Plan's Trustee as of December 31, 2006."  Id. (italics omitted).  The Corporation "obtained additional recoveries from Delta, which the [Corporation] initially valued as being worth $1,279,423."  Id. ¶ 45.  The plaintiffs allege that they should have received a portion of these recoveries before active pilots, but represent that this did not occur because

> by placing the benefits of active pilots (not yet in pay status) ahead of [Category 3] retirees (already in pay status)[,] the [Corporation] was able to corrupt the statutory recovery ratio by ensuring that hundreds of millions of dollars remained, undiluted, within the agency's trust fund in order to maximize the [Corporation's] investment returns.

Id.

As trustee of the trust fund that held the Plan's assets, the Corporation initially valued those assets at approximately $1.984 billion and calculated that the Plan's Category 3 liabilities were approximately $2.13 billion, "such that [Category 3] liabilities were 93% funded by the [Retirement] Plan's assets." Id. ¶¶ 42–43. The Corporation also determined that the Plan's "PC4" or Category 4 liabilities were $761,904,660. Id. ¶ 44. The Corporation started making benefits payments under the Plan, but "[t]hose benefits were significantly less than the vested pension benefits the [plaintiffs] had been entitled to receive under the Plan and [the] ERISA." Id. ¶ 46. In making its benefits determinations, the Corporation was allegedly motivated by

> strong incentives to minimize and delay payments to participants from the trust fund, and to allocate assets away from retirement eligible participants towards younger participants, all in an effort to manipulate the asset allocation scheme in order to maximize investment returns on the trust fund and further its own financial wellbeing.

Id. ¶ 23.

The Corporation "maintained that Plan participants were unable to challenge [its] benefit determinations until the [Corporation] issued its final benefit determinations." Id. Between 2010 and 2012,

> the [Corporation] began mailing final benefit determination letters to Plan participants, informing them of the [Corporation's] final determinations (as insurer and trustee) of any guarantee funds they were entitled to under ERISA § 4022, any asset allocation payments they were entitled to under ERISA § 4044, and any recovery allocation they were entitled to under ERISA § 4022(c).

Id. ¶ 47.

Each plaintiff had forty-five days to appeal the Corporation's final benefit determination. Id. ¶ 49. The plaintiffs allege that the Corporation refused to extend the forty-five-day deadline "until its own internal records confirmed that a final benefit determination had issued." Id. ¶ 51.

5

"Consequently, over 300 Plan participants who appealed the [Corporation's] determinations were later deemed 'untimely,' many missing the [Corporation]'s . . . 45-day deadline by a matter of days," id., although some of these "untimely" designations were reversed for "good cause," id. n.13.

In addition, although the plaintiffs in May 2010 requested all information relied upon by the Corporation in reaching its final benefit determinations, only a "fraction" of that information had been produced by October 2011, prompting "a group of 1,784 participant, most of whom are [the plaintiffs] in this action, [to] file[] a consolidated appeal of the [Corporation's] benefit determinations under the Plan.  Id. ¶ 53.  That appeal was resolved by a September 2013 decision issued by the Corporation's Appeals Board that largely upheld the Corporation's final determinations.  Id. ¶ 55; see generally id., Ex. H (Appeals Board decision) at 6 (summarizing the Appeals Board's conclusions).  The Appeals Board decision constituted final agency action, id., Ex. H (Appeals Board decision) at 6, and this lawsuit was then initiated.

## II.   STANDARD OF REVIEW

For a complaint to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint must state a facially plausible claim for recovery. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  To satisfy this requirement, the court must find that the complaint is sufficient to "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555; see Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting Twombly, 550 U.S. at 570)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678

(quoting <u>Twombly</u>, 550 U.S. at 556).

"In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court

must construe the complaint in a light most favorable to the non-moving party and must accept

as true all reasonable factual inferences drawn from well-pleaded factual allegations." <u>Armenian</u>

<u>Assembly of Am., Inc. v. Cafesjian</u>, 597 F. Supp. 2d 128, 133–34 (D.D.C. 2009).  However,

legal conclusions masquerading as factual allegations are not enough to survive a motion to

dismiss.  <u>Browning v. Clinton</u>, 292 F.3d 235, 242 (D.C. Cir. 2002).  Although the Court must, in

general, limit its review to the allegations in the complaint, it may consider "documents upon

which the complaint necessarily relies even if the document is produced not by the plaintiff in

the . . . complaint but by the defendant in a motion to dismiss." <u>Ward v. D.C. Dep't of Youth</u>

<u>Rehab. Servs.</u>, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (quoting <u>Hinton v. Corr. Corp. of Am.</u>,

624 F. Supp. 2d 45, 46 (D.D.C. 2009)).

### III.     ANALYSIS

**A.     The Breach of Fiduciary Duty Claim (Claim One)**

    **1.     Whether the Fiduciary Breach Claim Is Impermissibly Duplicative**

The Corporation argues that the plaintiffs' breach of fiduciary duty claim under the

ERISA is impermissibly duplicative of their claim for re-allocation of Plan benefits elsewhere in

the Amended Complaint.  Def.'s Mem. at 18.  Claim One of the Amended Complaint alleges that

the Corporation breached its fiduciary obligations under the ERISA by: (1) seeking to withhold

or delay the production of information critical to the understanding of the [Corporation's] benefit

determination and asset allocation choices," Am. Compl. ¶ 66; (2) denying the plaintiffs an

opportunity to lodge an informed appeal of the Corporation's final determination, <u>id.</u> ¶ 67; (3)

"allowing its agency litigation counsel to advise its [A]ppeals [B]oard, and refusing to disclose the contacts between the two groups," id. ¶ 68; (4) outsourcing "many of its trustee responsibilities to independent contractors who lack[ed] the requisite competence or experience" to perform those duties adequately, then failing to monitor and remedy their inadequate performance, see id. ¶¶ 69–70; and (5) "manipulat[ing] the asset allocation process in such a manner as to create hundreds of millions of dollars of investment returns to itself, at [the plaintiffs'] expense," id. ¶ 71. As a result of these alleged fiduciary breaches, the plaintiffs contend that "the [Corporation] has unjustly earned massive investment returns off of assets that should have been timely allocated to [the p]laintiffs, and the [Corporation] should be required to disgorge itself of this unjust enrichment." Id. ¶ 72. But in addition to asserting these breaches of fiduciary duty, the Corporation notes that the plaintiffs have also pleaded, in Claims Two through Five of the Amended Complaint, various challenges to the Corporation's asset allocation and benefits determinations under the ERISA. See generally id. ¶¶ 73–150 (challenging the Corporation's prioritization and allocation of benefits due to the plaintiffs).

In support of its argument that the plaintiffs' fiduciary breach claim is impermissibly duplicative, the Corporation relies on this Court's observation in Wright v. Metropolitan Life Insurance Co. that the majority of Circuits presented with a claim for breach of fiduciary duty and a separate claim for benefits under the ERISA "have held that a breach of fiduciary duty claim cannot stand where a plaintiff has an adequate remedy through a claim for benefits under § [1132](a)(1)(B)." 618 F. Supp. 2d 43, 55 (D.D.C. 2009) (Walton, J.) (quoting Clark v. Feder Semo & Bard, P.C., 527 F. Supp. 2d 112, 116 (D.D.C. 2007)). To date, no judge in this district court has deviated from that conclusion. See Boster v. Reliance Standard Life Ins. Co., 959 F. Supp. 2d 9, 31 (D.D.C. 2013) (denying amendment of the plaintiff's complaint to add a breach of

fiduciary duty claim as futile because the only alleged injury resulting from the alleged breach

was a loss of benefits, and "[t]he Court ha[d already] provided an adequate remedy for [the

plaintiff's] loss of benefits" pursuant to the plaintiff's claim for benefits under 29 U.S.C.

§ 1132(a)(1), rendering "[a]ny further equitable relief . . . inappropriate"); Zalduondo v. Aetna

Life Ins. Co., 845 F. Supp. 2d 146, 155 (D.D.C. 2012) (concluding that equitable relief pursuant

to § 1132(a)(3) was not appropriate because "[t]he only harm alleged in [the complaint]—that is,

the harm suffered by [the plaintiff] through Aetna's allegedly improper denial of her [benefits]

request . . . is adequately provided for in the denial-of-benefits claim brought pursuant to

§ 1132(a)(1)(B)); Clark v. Feder, Semo & Bard, P.C., 808 F. Supp. 2d 219, 225–26 (D.D.C.

2011) (holding that the plaintiff "must choose" whether to proceed under a claim for benefits

§ 1132(a)(1)(B) or under a fiduciary breach claim under § 1132(a)(3)); Kifafi v. Hilton Hotels

Ret. Plan, 616 F. Supp. 2d 7, 39 (D.D.C. 2009) (the plaintiff's breach of fiduciary duty claim

"must be dismissed because a plan participant cannot proceed with a breach of fiduciary duty

claim under [§ 1132](a)(3) when relief is available under other remedial sections of ERISA."

(citing, inter alia, Varity Corp. v. Howe, 516 U.S. 489, 515 (1996)).  But see Moyle v. Liberty

Mut. Ret. Benefit Plan, ___ F.3d ___, 2016 WL 2946271, at *10–11 (9th Cir. May 20, 2016)

(recognizing that litigants may plead alternative theories of relief under 29 U.S.C.

§ 1132(a)(1)(B) and 1132(a)(3) so long as they do not obtain duplicate recoveries); Silva v.

Metro. Life Ins. Co., 762 F.3d 711, 726 (8th Cir. 2014) ("We do not read Varity . . . to stand for

the proposition that [the plaintiff] may only plead one cause of action to seek recovery of his

son's supplemental life insurance benefits.  Rather, we conclude [that] those cases prohibit

duplicate recoveries when a more specific section of the [ERISA] . . . provides a remedy similar

to what the plaintiff seeks under the equitable catchall provision, § 1132(a)(3).").  The District of Columbia Circuit has not addressed the issue.

In opposition, the plaintiffs assert that they are pursuing their fiduciary breach claim under a different provision of the ERISA, 29 U.S.C. § 1303(f), not under § 1132(a), and therefore the cases cited by the Corporation are inapposite.  Pls.' Opp'n at 22.  The Court agrees that there are sufficient textual differences between the civil enforcement provisions of § 1132(a), which are applicable to ERISA fiduciaries other than the Corporation, as compared to § 1303(f), which is "the exclusive means for bringing actions against the [C]orporation," rendering analyses based on cases analyzing the former provision distinguishable from this case. In relevant part, § 1132(a) enumerates several avenues of relief, including a claim "to recover benefits due to [a plaintiff] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" pursuant to § 1132(a)(1)(B), or "other appropriate equitable relief" under § 1132(a)(3).  See 29 U.S.C. § 1132(a).  The Supreme Court's decision in Varity Corp. allowed an individual claim for breach of fiduciary duty to proceed under § 1132(a)(3) because no other civil enforcement remedy under § 1132(a) was available based on the circumstances presented in that case.  516 U.S. at 515 ("The plaintiffs in this case could not proceed under the first subsection [of § 1132(a)] because they were longer members of the . . . plan [at issue] and, therefore, had no 'benefits due [them] under the terms of [the] plan.'  § [1132](a)(1)(B).  They could not proceed under the second subsection because that provision, tied to § [1109], does not provide a remedy for individual beneficiaries. . . .  They must rely on the third subsection or they have no remedy at all.  We are not aware of any ERISA-related purpose that denial of a remedy would serve.  Rather, we believe that granting a remedy is consistent with the literal language of the statute, the [ERISA]'s

purposes, and pre-existing trust law.") (third and fourth alterations in original) (citation

omitted)).  In stark contrast, § 1303(f) is devoid of the several subparagraphs contained in

§ 1132(a), and instead authorizes only "any person . . . who is a participant or beneficiary, and is

adversely affected by any action of the [C]orporation with respect to a plan in which such person

has an interest . . . [to] bring an action against the [C]orporation for appropriate equitable

relief . . . ."  29 U.S.C. § 1303(f)(1).

     The plaintiffs assert that they "brought their case pursuant to § [1303](f)," and that "they

could not even sue the [Corporation] under the provisions of § [1132] whatsoever."  Pls.' Opp'n

at 24.  Thus, the plaintiffs themselves pursue their entire case—not merely their fiduciary breach

claims—outside of the civil enforcement realm of § 1132, upon which the Corporation's

"duplicative" argument relies.  See id.  Indeed, the Court's review of the allegations contained in

Claims Two through Five reveals that the plaintiffs focus those claims on the Corporation's

alleged failure to properly prioritize and calculate the allocation of assets in the terminated Plan

in violation of 29 U.S.C. §§ 1322 and 1344, which are contained in Title IV of the ERISA and

form part of the same ERISA subchapter that includes § 1303, cf. § 1303(f)(4) ("This subsection

shall be the exclusive means for bringing actions against the corporation under this

subchapter . . . ." (emphasis added)), and not upon any benefit allocation provision contained in

Title I of the ERISA, wherein the separate civil enforcement provisions of § 1132 are found.

See, e.g., Am. Compl. ¶ 76 (alleging in Claim Two that the Corporation's actions resulted in

"Delta Pilots who were entitled to priority in the allocation of Plan assets – those in [Category] 3

– were deprived of pension benefits ERISA mandates that they receive, while those whom

Congress placed further to the back of the line – those outside of [Category] 3 – received over

$1.8 billion from Delta before the asset allocation process even began."); id. ¶¶ 86–101 (alleging

in Claim Three that the Corporation misapplied § 1344 by failing to account for congressionally-mandated increases to the limit of compensation that may be used to calculate benefits); id. ¶¶ 113–27 (alleging in Claim Four that the Corporation misapplied § 1344 by failing to account for congressionally-mandated increases in the amount of benefits that may be paid to plan participants in a given year); id. ¶¶ 131–49 (alleging in Claim Five that the Corporation, pursuant to its authority under 29 U.S.C. § 1362, incorrectly determined the ratio of recovered liabilities to be distributed to Plan participants and beneficiaries, as required by § 1322(c)).  Because of the textual differences between § 1303(f) and § 1132(a), the Court agrees with the plaintiffs that the Corporation's challenge to the plaintiffs' fiduciary breach claims as duplicative of their other claims lacks merit.

**2.     Whether the Relief Sought by The Plaintiffs in Claim One Is "Appropriate Equitable Relief" Under § 1303(f)**

Having concluded that the plaintiffs' fiduciary breach claim is not impermissibly duplicative of the plaintiffs' other ERISA claims, the Court now addresses whether the relief sought in Claim One of the Amended Complaint is "appropriate equitable relief" as required by § 1303(f).  The plaintiffs allege that as a result of the breaches alleged in Claim One, the Corporation earned investment returns on undistributed benefits that should be disgorged.  Am. Compl. ¶ 72.  Further, the plaintiffs assert that, contrary to the Corporation's contention, any recovery on their breach of fiduciary duty claim may inure to them individually as opposed to the Plan at large.  Pls.' Opp'n at 23–25.  The threshold question for the Court to answer is whether the relief the plaintiffs seek, i.e., to recoup from the Corporation its alleged ill-gotten investment returns on assets that should have been distributed to the plaintiffs, constitutes a claim for compensatory damages or one for equitable relief.  In resolving this question, the Court is "'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending

remedies not specifically authorized by its text."  Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209 (2002) (alteration in original) (quoting Mass. Mut. Life Ins. Co. v. Russell, 437 U.S. 134, 147 (1985)).

The Supreme Court in Mertens v. Hewitt Associates grappled with the legal-versus-equitable remedy distinction in its analysis of the phrase "appropriate equitable relief" in § 1132(a)(3).[4]  See 508 U.S. 248, 255 (1993) ("Money damages are, of course, the classic form of legal relief. . . .  And though we have never interpreted the precise phrase 'other appropriate equitable relief,' we have construed similar language . . . to preclude 'awards for compensatory or punitive damages.'" (citations omitted)).  The Mertens decision established that "appropriate equitable relief" refers to "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)."  508 U.S. at 256; see also CIGNA Corp. v. Amara, 563 U.S. 421, 439 (2011) ("We have interpreted the term 'appropriate equitable relief' in § [1132](a)(3) as referring to those 'categories of relief' that, traditionally speaking (i.e., prior to the merger of law and equity), 'were typically available in equity.'" (quoting Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 361 (2006), and Mertens, 508 U.S. at 256)).  And, the Supreme Court in Harris Trust & Savings Bank v. Salomon Smith Barney, Inc. recognized that both restitution and disgorgement were remedies typically available in equity.  530 U.S. 238, 250 (2000) ("[I]t has long been settled that when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, . . . "the beneficiaries may then maintain an action for restitution of the property (if not already disposed

---

[4] As the Supreme Court generally "assume[s] that the same terms have the same meaning in different sections of the same statute," Barnhill v. Johnson, 503 U.S. 393, 406 (1992), the Court is persuaded that cases interpreting the meaning of the terms "appropriate equitable relief" in § 1132(a)(3)(B) may weigh heavily in the Court's analysis of the meaning of the same terms in § 1303(f).  See also IBP, Inc. v. Alvarez, 546 U.S. 21, 33–34 (2005) (noting "the normal rule of statutory interpretation that identical words used in different parts of the same statute are generally presumed to have the same meaning").

of) or disgorgement of the proceeds (if already disposed of) . . . ." (citing, inter alia, Restatement

(Second) of Trusts §§ 284, 291, 294, 295, 297)).

> Moreover, the Supreme Court in Amara stated that a district court's

> injunctions requir[ing] the plan administrator to pay to already retired beneficiaries money owed to them under the plan . . . [in] the form of a money payment does not remove [the remedy] from the category of traditionally equitable relief.  Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment.  Indeed, prior to the merger of law and equity this type of monetary remedy against a trustee, sometimes called a "surcharge," was "exclusively equitable."

563 U.S. at 441–42 (emphasis added) (quoting Princess Lida of Thurn & Taxis v. Thompson,

305 U.S. 456, 464 (1939)).  Following the Amara decision, the Seventh Circuit in Kenseth v.

Dean Health Plan, Inc. recognized that a plaintiff's claim for "make-whole relief in the form of

monetary compensation for a breach of fiduciary duty" could qualify as a form of "appropriate

equitable relief" under 29 U.S.C. § 1132(a)(3).  722 F.3d 869, 891–92 (7th Cir. 2013).

> Here, the plaintiffs' breach of fiduciary duty claim alleges that, as a result of the

Corporation's alleged breaches, see Am. Compl. ¶¶ 64–71, it earned investment returns from

Plan assets that should have been distributed to the plaintiffs, and that the Corporation should be

required to disgorge those proceeds, id. ¶ 72.  Consistent with the Supreme Court's holding in

Amara, the Court concludes that the relief sought by the plaintiffs here is fairly characterized as

"appropriate equitable relief" under § 1303.  See also Moore v. CapitalCare, Inc., 461 F.3d 1, 13

(D.C. Cir. 2006) ("An accounting for profits 'is a restitutionary remedy based upon avoiding

unjust enrichment' and its purpose is to 'disgorge gains received from improper use of the

plaintiff's property or entitlements.'" (emphasis added) (quoting 1 Dan B. Bobbs, Law of

Remedies § 4.3(5) (2d ed. 1993))); Foltz v. U.S. News & World Report, Inc., 627 F. Supp. 1143,

1167 (D.D.C. 1986) (allowing a claim for monetary compensation for a breach of fiduciary duty

to proceed under § 1132(a)(3) because "the remedies traditionally afforded beneficiaries by the common law of trusts include the recoupment from a breaching fiduciary of money damages, so that the beneficiary may be made whole." (citing Restatement (Second) of Trusts §§ 199(c), 205 (1959); G. Bogert & G. Bogert, The Law of Trusts and Trustees § 862 (2d rev. ed. 1982); III A. Scott, The Law of Trusts §§ 199.3, 205 (3d ed. 1967))).  Thus, even if the plaintiffs' claim for disgorgement takes the form of a monetary payment for the breach of fiduciary duty they allege against the Corporation, such a remedy is not precluded under the ERISA.

To support its assertion that the ERISA precludes the disgorgement sought by the plaintiffs, the Corporation first argues that the plaintiffs "seek the purported increase in the value of the Plan's assets after termination," Def.'s Mem. at 14, a result it claims is prohibited by § 1344(c), which states that "[a]ny increase or decrease in the value of the assets of a single-employer plan occurring after the date on which the plan is terminated shall be credited to, or suffered by, the [C]orporation."  Construing the allegations in the Amended Complaint in the light most favorable to the non-moving party, Cafesjian, 597 F. Supp. 2d at 133–34, the Court notes that the plaintiffs' fiduciary breach claim does nothing of the sort.  Rather, Claim One seeks to recoup the alleged ill-gotten investment returns on Plan benefits that the plaintiffs claim should have been distributed to them, Am. Compl. ¶ 72, not, as the Corporation characterizes the claim, to divert from the Corporation any gains (or losses) from assets properly held in the Plan. The Court therefore rejects the Corporation's first argument.

The Corporation also argues that "the Sixth Circuit specifically rejected a claim for disgorgement of profits in a case where the plaintiff sought to recover ERISA plan benefits." Def.'s Mem. at 15 (citing Rochow v. Life Ins. Co. of N. Am., 780 F.3d 364 (6th Cir. 2015)). Even if the Rochow case were binding precedent on this Court, the Corporation's reliance on it

would be unavailing.  The issue before the <u>Rochow</u> court was whether an equitable recovery under § 1132(a)(3) was impermissibly duplicative of the plaintiff's recovery of unpaid benefits under § 1132(a)(1)(B).  That opinion said nothing about the question of whether disgorgement is "appropriate equitable relief," and the Corporation's reliance on <u>Rochow</u> therefore misses the mark.  Having already concluded that the plaintiffs' request for an equitable remedy in the form of disgorgement qualifies as "appropriate equitable relief" under § 1303(f), the Court rejects the Corporation's assertions that Claim One must be dismissed on this ground.

### 3.    Whether the Plaintiffs May Recover Individually for the Alleged Fiduciary Breach

Related to the question of whether the type of relief (disgorgement) sought by the plaintiffs constitutes "appropriate equitable relief" is the question of whether any remedy may inure to the plaintiffs individually as opposed to the Plan at large.  The Corporation asserts that any recovery inuring to the plaintiffs individually, as opposed to recoveries going to the Plan at large, is impermissible relief under the ERISA.  <u>See</u> Def.'s Mem. at 11–14.  In support of this argument, the Corporation relies on 29 U.S.C. § 1342, which states that the Corporation's fiduciary obligations are governed by Title I of the ERISA, except where inconsistent with Title IV, <u>see</u> 29 U.S.C. § 1342(d)(3), and the Supreme Court's holding in <u>Russell</u>, which held that any recoveries under Title I's fiduciary duty provision, § 1109, inure only to the plan as a whole. Def.'s Mem. at 14.

Beginning, as the Court must, with the statutory language, <u>Harris Trust</u>, 530 U.S. at 254, the Court observes at the outset that nothing in § 1303(f) suggests that the appropriate equitable relief allowed by that provision must inure only to the plan as a whole.  It states, in relevant part that, "any person who is a . . . participant or beneficiary, and is adversely affected by any action of the corporation with respect to a plan in which such person has an interest, . . . may bring an

action against the [C]orporation for appropriate equitable relief in the appropriate court."  29

U.S.C. § 1303(f)(1).  The Court discerns nothing in this language suggesting that any equitable

relief awarded by a Court should not inure to the person "with an interest in the plan," id., who is

authorized to bring suit against the Corporation, and the Corporation has cited no authority that

supports its proposition.  The Court also observes that the language of § 1109 and § 1303(f)(1)

are hardly identical, compare § 1109 ("Any person who is a fiduciary with respect to a plan who

breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this

subchapter shall be personally liable to make good to such plan any losses to the plan  . . . and to

restore to such plan any profits of such fiduciary which have been made through use of assets of

the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the

court may deem appropriate." (emphases added)) with § 1303(f)(1) (quoted above), rendering

arguments arising from an analysis of remedies available under § 1109 less persuasive.

Further, the cases upon which the Corporation relies, see Def.'s Mem. at 12, do little to

support its position, because none of them address the equitable remedies made available under

§ 1303(f), see Varity Corp., 516 U.S. at 515 (plaintiffs "could not proceed under [§ 1132(a)(2)]

because that provision, tied to [§ 1109], does not provide a remedy for individual beneficiaries");

Russell, 473 U.S. at 141–48 (concluding that § 1109 provides only plan-wide relief); Murchison

v. Murchison, 180 F. App'x 163, 265 (D.C. Cir. 2006) (remanding fiduciary breach claims

against individual defendant pursuant to § 1109 to district court for the entry of an order

requiring the fiduciary to distribute misappropriated funds to the plan); Repass v. AT&T Pension

Benefit Plan, No. 3:14-CV-2686-L, 2015 WL 5021405, at *4 n.2 (N.D. Tex. Aug. 25, 2015)

(noting that the plaintiff could not bring a fiduciary breach claim against the defendant pension

benefit plan under § 1132(a)(2) because that provision provides only plan-wide relief); Wallace

v. Blue Cross & Blue Shield of Ala., No. 14-0119-CG-C, 2014 WL 5335823, at *4 (S.D. Ala. Oct. 20, 2014) (dismissing plaintiffs' fiduciary breach claims against health insurance company because the plaintiffs impermissibly sought individual relief under § 1132(a)(2)); Zalduondo, 845 F. Supp. 2d at 154 (dismissing plaintiff's claim against health insurance company because the plaintiff sought individual relief under § 1132(a)(2)); Harris v. Koenig, 602 F. Supp. 2d 39, 50 (D.D.C. 2009) (holding that the plaintiffs' breach of fiduciary claims against individual defendants properly sought plan-wide relief under § 1132(a)(2)).

 As the plaintiffs note, the Supreme Court recognized in Varity Corp., albeit in analyzing whether equitable relief was available to the plaintiffs for alleged fiduciary breaches under 29 U.S.C. § 1132(a)(3), that § 1109 is not the only provision in the ERISA that provides a remedy for fiduciary breach.  Pls.' Opp'n at 24; see Varity Corp., 516 U.S. at 511–12 ("[W]hy should one believe that Congress intended the specific remedies in § [1109] as a limitation? . . . .  To the contrary, one can read § [1109] as reflecting a special congressional concern about plan asset management without also finding that Congress intended that section to contain the exclusive set of remedies for every kind of fiduciary breach.  After all, ERISA makes clear that a fiduciary has obligations other than, and in addition to, managing plan assets. . . .  Why should we not conclude that Congress has provided yet other remedies for yet other breaches of other sorts of fiduciary obligation in another 'catchall' remedial section?").  The Court agrees that the Corporation's reliance on Russell, which limited the § 1109 remedies to plan-wide relief, is misplaced.  Absent authority indicating that § 1303(f) does not provide an avenue for individual relief as an equitable remedy, the Court rejects the Corporation's arguments that the Amended Complaint fails to state a claim upon which relief may be granted on this ground.

### 4.     The Corporation's Remaining Arguments

The Corporation's remaining arguments can be addressed with limited discussion.  First, it asserts that the plaintiffs' breach of fiduciary duty claim fails because the plaintiffs can recover no more than their statutory benefits, Defs.' Mem. at 15–17, relying primarily on Bechtel v. Pension Benefit Guaranty Corp., 781 F.2d 906 (D.C. Cir. 1986), and Dumas v. Pension Benefit Guaranty Corp., 253 F. App'x 602 (7th Cir. 2007), as support for this argument.  In Bechtel, this Circuit affirmed the district's court's ruling that the Corporation had properly determined that it had previously allowed the distribution of plan benefits above the maximum benefit level guaranteed pursuant to 29 U.S.C. § 1322 and could thereafter recapture these overpayments by downwardly adjusting the level of future payments.  781 F.2d at 906.  And in Dumas, the Seventh Circuit rejected the plaintiffs' claim that the Corporation had promised, by way of representations on an informational brochure, that they would be entitled to over $3000 in monthly pension benefits, not the roughly $400 monthly payments they had been receiving, which the Corporation had determined was all the plaintiffs were entitled to receive, based on their prior contributions into the pension plan.  253 F. App'x at 604.  The plaintiffs argue that these cases are inapposite because neither involves a claim for breach of fiduciary duty, Pls.' Opp'n at 30, and the Court agrees.  The Court finds no support in Bechtel or Dumas, which address what statutory benefits the Corporation is permitted to distribute under the ERISA, for the Corporation's argument that the plaintiffs' are barred from pursuing a claim of fiduciary breach.

The Corporation also argues that Claim One is implausible on its face because it alleges that the Corporation's breach of fiduciary duty was intended to inflate its own coffers, a motivation the Corporation asserts is impossible given the Corporation's structure and purpose.

See Def.'s Mem. at 23–24.  The plaintiffs challenge this argument through several additional factual assertions in their opposing brief regarding the Corporation's funding and operations. See Pls.' Opp'n at 37–39.  But all that is required by Rule 12(b)(6) is that the allegations in the Amended Complaint, which the Court must treat as true, Cafesjian, 597 F. Supp. 2d at 133–34, state a plausible claim for relief, Twombly, 550 U.S. at 570.  The Corporation acts as a fiduciary in its role as statutory trustee of a terminated ERISA plan.  See 29 U.S.C. § 1342(d)(3) ("Except to the extent inconsistent with the provisions of this chapter, or as may be otherwise ordered by the court, a trustee appointed under this section . . . shall be, with respect to a plan, a fiduciary within the meaning of [29 U.S.C. § 1002(21)] . . . .").  And the "ERISA requires a trust fund fiduciary to act 'solely in the interest' of a plan's participants and beneficiaries . . . ."  Fink v. Nat'l Sav. & Trust Co., 772 F.2d 951, 955 (D.C. Cir. 1985) (quoting 29 U.S.C. § 1104(a)(1)(B)). Claim One alleges that the Corporation, in its capacity as trustee, engaged in various conduct, see generally Am. Compl. ¶¶ 63–71, that resulted in the Corporation "earn[ing] massive investment returns off of assets that should have been timely allocated" to the plaintiffs, id. ¶ 72.  At this early stage in the case, the Court deems these allegations sufficient to state a plausible claim of fiduciary breach against the Corporation as trustee of the Plan.  The Court will therefore allow the plaintiffs to proceed with Claim One of the Amended Complaint.

**B.      The Plaintiffs' Demand for Attorney's Fees**

        As the plaintiffs concede, their demand for attorney's fees must fail.  See Am. Compl. at 126; Pls.' Opp'n at 1 n.1 ("Plaintiffs do not dispute that Stephens precludes an award of attorney's fees in this action . . . .").  It is settled law in this Circuit that the ERISA does not authorize the recovery of attorney's fees in an action against the Corporation under 29 U.S.C.

§ 1303(f).  <u>Stephens v. U.S. Airways Grp., Inc.</u>, 644 F.3d 437, 442 (D.C. Cir. 2011).[5]  Further,

because the plaintiffs failed to respond to the Corporation's arguments with respect to the

availability of attorney's fees under the Equal Access to Justice Act, 5 U.S.C. § 502(a)(2) (2012),

<u>see generally</u> Pls.' Opp'n, the Court shall deem the argument conceded by the plaintiffs, <u>Hopkins</u>

<u>v. Gen. Bd. of Global Ministries</u>, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in

this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only

certain arguments raised by the defendant, a court may treat those arguments that the plaintiff

failed to address as conceded."), <u>aff'd</u>, 98 F. App'x 8 (D.C. Cir. 2004).  The Court therefore

grants the Corporation's motion to strike the plaintiffs' demand for attorney's fees.

## IV.   CONCLUSION

For the foregoing reasons, the Corporation's motion to dismiss Claim One of the

Amended Complaint will be denied.  However, the Corporation's motion to strike the plaintiffs'

demand for attorney's fees and for a jury trial will be granted.[6]

**SO ORDERED** this 6th day of July, 2016.

REGGIE B. WALTON
United States District Judge

---

[5] This concession notwithstanding, the plaintiffs indicate that they wish to preserve the question of whether an attorney's fees demand under 29 U.S.C. § 1303(f)(3) may be permitted for potential <u>en banc</u> review by the Circuit. Pls.' Opp'n at 1 n.1.

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.